# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| HERMAN BANDY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRC COMPANIES, INC.,<br><br>Defendant. | Civil Action No.: 1:22-cv-00144<br><br><br>**COLLECTIVE ACTION COMPLAINT** |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff, Herman Bandy ("Bandy" or "Plaintiff"), on behalf of himself and all others similarly situated, brings this lawsuit to recover unpaid overtime wages and other damages from Defendant TRC Companies, Inc., ("TRC" or "Defendant") under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et seq.*

2. Bandy worked for the Defendant TRC as a Landman Supervisor[1] from approximately January 1, 2019, to July 7, 2020.

3. Bandy, and the Putative Collective Action Members (as defined below) regularly worked in excess of 40 hours per workweek.

4. Bandy, and the Putative Collective Action Members, never received overtime compensation for the hours worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA, Defendant paid Bandy, and

---

[1] Landmen are also referred to as Land Agents, Land Managers, Right-of-Way Agents, or Abstractors.

the Putative Collective Action Members, a flat rate for each day worked ("day rate") without overtime premium compensation for hours worked in excess of 40 hours in a workweek.

6. Bandy, and the Putative Collective Action Members, never received a guaranteed salary. *See Hewitt v. Helix Energy Sols. Grp., Inc.*, No. 19-20023, 2021 U.S. App. LEXIS 27215 (5th Cir. Sep. 9, 2021) (holding that a day rate alone cannot meet the salary basis test for FLSA exemptions).

7. Because Bandy and the Putative Collective Action Members were never paid a salary, the white-collar exemptions to the FLSA do not apply, regardless of the job duties performed by Bandy and the Putative Collective Action Members.

8. Defendant TRC is therefore liable to Bandy, and the Putative Collective Action Members, for the per se violation of the FLSA.

9. This collective action seeks to recover the unpaid overtime wages, and other damages, owed to Bandy and the Putative Collective Action Members.

## **JURISDICTION & VENUE**

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

13. Defendant TRC Companies, Inc. has its principal place of business at 21 Griffin Road North, Windsor, CT 06095 as indicated by the Texas Secretary of State business entity database.

14. Defendant TRC Companies, Inc. conducts substantial business operations in this District.

15. Defendant TRC hires Texas residents to perform work in Texas pertaining to Texas real estate and Texas property. Indeed, the claims in this case arise directly out of Defendant TRC's contacts with the forum state, namely hiring Texas residents as employees to perform work in Texas.

16. Defendant TRC has five offices in this District located at: 9225 Hwy 183 South, Austin, Texas 78747; 505 East Huntland Drive, Suite 250, Austin, Texas 78752; 809 East Court Street, Suite 106, Seguin, Texas 78155; 10 Desta Drive, Suite 150E, Midland, Texas 79705; and 3111 West County Road, #127, Midland, Texas 79706.

17. Defendant TRC has four additional offices within the forum state of Texas including three in Houston, Texas and one in Arlington, Texas.

18. Defendant TRC Companies, Inc. maintains a listed registered agent for service of process in Texas located at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136 as indicated by the Texas Secretary of State business entity database.

## PARTIES

19. Herman Bandy currently resides in Stephens County in Texas. Bandy was employed by Defendant TRC from approximately January 1, 2019, to July 7, 2020.

20. Bandy worked as a Landman/Supervisor for Defendant out of their Midland, Texas office located at 10 Desta Drive, Suite 150E, Midland, Texas 79705.

21. Throughout his employment with the Defendant, Bandy was paid a day rate with no overtime compensation despite working substantial overtime hours.

22. TRC purports to be a leading, global consulting, engineering and construction

management firm that provides environmentally focused and digitally powered solutions across their key markets.

23. Bandy's relationship with the Defendant was an employer/employee relationship.

24. Bandy brings this action on behalf of himself and all other similarly situated employees who worked more than 40 hours in any given workweek and who did not receive the proper overtime compensation based on TRC's day rate compensation system.

25. Bandy and the Putative Collective Action Members regularly worked more than 40 hours each week.

26. Defendant paid these employees a day rate, regardless of the hours worked, and failed to pay overtime premium compensation for hours worked in excess of 40 in a workweek, in clear violation of the FLSA.

27. The similarly situated employees, or Putative Collective Action Members, sought to be certified is defined as follows:

> **All Landmen, Land Agents, Right-of-Way Agents, Title Agents, and similar employees, employed by, or working on behalf of, TRC Companies, Inc. who worked in excess of 40 hours in any given workweek, and who were paid a day rate which failed to include overtime compensation at any time during the past three (3) years (the "Putative Collective Action Members").**

28. The Putative Collective Action Members are easily ascertainable from the business and personnel records maintained by Defendant.

## COVERAGE UNDER THE FLSA

29. At all relevant times, Defendant TRC has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Defendant TRC has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

31.     At all relevant times, Defendant TRC has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). The Defendant has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

32.     At all relevant times, Defendant has had annual gross volume of sales made, or business done, of not less than $1,000,000.00.

33.     At all relevant times, Bandy and the Putative Collective Action Members were engaged in commerce or in the production of goods for commerce.

34.     Defendants treated Bandy and the Putative Collective Action Members as employees and uniformly dictated the pay practices which applied to them.

35.     Defendant's day rate pay scheme, depriving Bandy and the Putative Collective Action Members of overtime compensation for weeks in which they worked over 40 hours is, in and of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

36.     Defendant TRC purports to be "a leading, global consulting, engineering and construction management firm that provides environmentally focused and digitally powered solutions across our key markets."[2]

37.     To provide services, Defendant hired personnel (similar to Bandy) to work on their behalf, including other landmen and supervisors, who provide oil and gas leasing services, obtain easements from property owners, research land titles, and other related work.

---

[2] https://www.trccompanies.com/ (last visited January 26, 2022).

38. As a Landman/Supervisor, Bandy's primary job duties included making phone calls and personal visits to land and mineral rights owners, preparing land leases and easements, submitting documents to his supervisors at TRC, reviewing titles and pipeline construction related matters, and attending regular meetings.

39. During the relevant period, Bandy worked for Defendant in excess of 40 hours on numerous occasions.

40. During the relevant period, Bandy was paid a day rate for each day worked, regardless of the number of hours worked, and Defendant wrongly denied him the overtime premium compensation he deserved for hours worked in excess of 40 in any workweek.

41. Without the job performed by Bandy, Defendant would not have been able to complete its business objectives.

42. Bandy was economically dependent on Defendant and relied on Defendant for work and compensation.

43. Defendant dictated the amount and the type of compensation that Bandy would receive.

44. Bandy was never paid a salary.

45. Bandy never received overtime compensation for hours worked in excess of 40 in a workweek.

46. If Bandy did not work in a week, he did not receive a guaranteed amount of at least $455 prior to January 1, 2020 or $684 after January 1, 2020.

47. Bandy often worked more than 12 hours per day, for five (or more) days per week, for weeks at a time.

48. Defendant knew Bandy regularly worked in excess of 40 hours in numerous

workweeks.

49. During the time he was employed by Defendant, Bandy did not work for himself, nor did he work for any other company or employer and, as a practical matter, worked so many hours for Defendant that he was precluded from being available to work for any other potential employer.

50. Defendant set Bandy's weekly schedule and his compensation and what assignments he would be tasked to work on.

51. Bandy had no control over the profits he may earn or loss he may incur while working for Defendant.

52. The work Bandy performed was an essential part of Defendant's core businesses.

53. Bandy was required to follow and abide by TRC's company policies and procedures.

54. Defendant uniformly denied, refused, or failed to pay Bandy overtime compensation for the hours he worked in excess of 40 hours in a single workweek.

55. Bandy was not exempt from overtime.

56. Defendants knew, or showed reckless disregard for whether, Bandy was not exempt from the FLSA's overtime provisions.

57. Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

58. The overtime owed to Bandy will be calculated using the Defendants' records or based on just and reasonable inference.

59. Bandy sustained damages arising out of Defendant's illegal and uniform employment policy.

60. Defendant is liable under the FLSA for failing to pay overtime to Bandy.

61. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Bandy.

62. Defendant was aware, or should have been aware, that the FLSA required them to pay Bandy overtime compensation for all hours worked in excess of 40 hours per workweek.

## COLLECTIVE ACTION ALLEGATIONS

63. Bandy brings this claim as a collective action under the FLSA.

64. Based on his experiences with Defendant, Bandy is aware that Defendant's illegal and unlawful practices and/or pay policies were imposed on the Putative Collective Action Members.

65. Bandy's experiences are typical of the experiences of the Putative Collective Action Members.

66. Bandy has no interest contrary to, or in conflict with, the Putative Collective Action Members that would prevent collective treatment.

67. The Putative Collective Action Members are similarly situated to Plaintiff Bandy in all relevant respects.

68. The Putative Collective Action Members were victimized by Defendant's pattern, practice, and/or policy which was a willful violation of the FLSA.

69. To provide services, Defendant hired the Putative Collective Action Members to work on their behalf.

70. During the relevant period, the Putative Collective Action Members worked for Defendant in excess of 40 hours a week for weeks at a time.

71. During the relevant period, the Putative Collective Action Members were paid a day rate for each day worked, regardless of the hours worked, and Defendant wrongly denied them the overtime premium compensation they deserved for hours worked in excess of 40 in any workweek.

72. Throughout their employment with Defendant, the Putative Collective Action Members regularly worked more than 40 hours each week without receiving overtime compensation.

73. Without the job performed by the Putative Collective Action Members, Defendant would not have been able to complete its business objectives.

74. The Putative Collective Action Members were economically dependent on Defendant and relied on Defendant for work and compensation.

75. Defendant dictated the amount and the type of compensation that the Putative Collective Action Members would receive.

76. The Putative Collective Action Members were never paid a salary.

77. The Putative Collective Action Members never received overtime compensation for hours worked in excess of 40 in a workweek.

78. If the Putative Collective Action Members did not work in a week, they did not receive a guaranteed amount of at least $455 prior to January 1, 2020 or $684 after January 1, 2020.

79. Putative Collective Action Members often worked more than 12 hours per day, for five (or more) days per week, for weeks at a time.

80. Defendant knew the Putative Collective Action Members regularly worked in excess of 40 hours in a workweek.

81. Defendant hired the Putative Collective Action Members with the intention that they would continue to work for OPS indefinitely.

82. During the time they were employed by Defendant, the Putative Collective Action Members were not in business for themselves, nor did they provide work for any other company or employer.

83. Defendant set the Putative Collective Action Members' schedules and compensation and decided what work they would perform.

84. The Putative Collective Action Members had no control over profits they might earn or losses they might incur while working for Defendant.

85. The Putative Collective Action Members were required to follow and abide by TRC's company policies and procedures.

86. The work the Putative Collective Action Members performed was an essential part of Defendant's core businesses.

87. Defendant uniformly denied, refused, or failed to pay the Putative Collective Action Members overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

88. The Putative Collective Action Members were not exempt from overtime.

89. Defendant knew, or showed reckless disregard for whether, the Putative Collective Action Members were not exempt from the FLSA's overtime provisions.

90. Defendant knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

91. The overtime owed to the Putative Collective Action Members will be calculated using the Defendant's records and the same formulae that applies to Bandy.

92. The Putative Collective Action Members sustained damages arising out of Defendant's illegal and uniform employment policy.

93. Defendant is liable under the FLSA for failing to pay overtime to the Putative Collective Action Members.

94. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Putative Collective Action Members.

95. Defendant was aware, or should have been aware, that the FLSA required them to pay the Putative Collective Action Members for all hours worked in excess of 40 hours per workweek.

96. A collective action is superior to other available means for fair, efficient, and consistent adjudication of the lawsuit.

97. Absent a collective action, many of the Putative Collective Action Members would not obtain redress for their injuries, and Defendant would reap the unjust benefits of violating the FLSA.

98. Further, even if some of the Putative Collective Action Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Collective Action Members, as well as provide judicial consistency.

100. The questions of law and fact that are common to each Putative Collective Action Member predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

   a. Whether Plaintiff and the Putative Collective Action Members were employees;
   b. Whether Defendant's decision to not pay overtime compensation to these workers was made in good faith;
   c. Whether Defendant's illegal and unlawful practices applied to the Putative Collective Action Members;
   d. The proper measure of damages sustained by Plaintiff and the Putative Collective Action Members.

  102. Bandy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

  103. Even if the issue of damages were somewhat individualized in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

  104. There are many similarly situated Putative Collective Action Members who have been denied, refused, or not paid overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

  105. The notice should be sent to the Putative Collective Action Members pursuant to 29 U.S.C. § 216(b).

  106. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

  107. Bandy realleges and incorporates by reference all allegations in preceding paragraphs.

  108. Bandy brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

  109. Defendant violated, and continues violating, the FLSA by failing to pay Bandy and the Putative Collective Action Members overtime compensation.

110. Bandy and the Putative Collective Action Members were Defendant's employees for purposes of the FLSA overtime requirements.

111. Defendant was Bandy's, and the Putative Collective Action Members', employer under the FLSA. Defendant suffered or permitted Bandy and the Putative Collective Action Members to work for, or on, its behalf during the relevant period.

112. Defendant cannot meet its burden to demonstrate that Bandy or the Putative Collective Action Members are exempt from overtime under the administrative exemption.

113. Defendant cannot meet its burden to demonstrate that Bandy or the Putative Collective Action Members are exempt from overtime under the executive exemption.

114. Defendant cannot meet its burden to demonstrate that Bandy or the Putative Collective Action Members are exempt from overtime under the professional exemption.

115. Defendant cannot meet its burden to demonstrate that Bandy or the Putative Collective Action Members are exempt from overtime under the highly compensated exemption.

116. Defendant cannot meet its burden to demonstrate that Bandy or the Putative Collective Action Members are exempt from overtime under the seamen exemption.

117. Defendant failed to pay Bandy and the Putative Collective Action Members overtime as required by the FLSA.

118. Defendant knowingly, willfully, or in reckless disregard, carried out this illegal pattern or practice of failing to pay Bandy and the Putative Collective Action Members overtime compensation.

119. Defendant's failure to pay overtime compensation to Bandy and the Putative Collective Action Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

120. Accordingly, Bandy and the Putative Collective Action Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their hourly rate of pay, plus liquidated damages, attorney's fees and costs.

## **PRAYER**

**WHEREFORE**, Plaintiff Herman Bandy, individually and on behalf of the Putative Collective Action Members, demands judgment against Defendant and respectfully requests that this Honorable Court grant the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Collective Action Members to permit them to join this action by filing a written notice of consent;

b. A judgment against Defendant awarding Bandy and the Putative Collective Action Members the unpaid overtime compensation owed to them and an additional, equal amount, as liquidated damages;

c. Declaratory judgement that the practices complained of in this Complaint are unlawful under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate under applicable law and in the Court's discretion.

Respectfully submitted,

By: */s/ Gabriel A. Assaad*
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
McDONALD WORLEY, P.C.
1770 St. James St., Suite 100
Houston, TX 77056
(713) 523-5500 – telephone
(713) 523-5501 – facsimile

Galvin Kennedy
Federal Bar No. 20791
Texas State Bar No. 00796870
Galvin@KennedyAttorney.com
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
(888) 389-9317 - facsimile

**ATTORNEYS FOR PLAINTIFF**